THOMAS C. LAZEAR et al., executors,

*v.*

AMERICAN STEEL FOUNDRIES.

[Decided September 20th, 1915.]

On January 3d, 1908, it was resolved by the board of directors of a corporation that it was advisable to change and decrease defendant's capital, consisting of preferred and common stock, to one class and kind without distinction or preference between any of the shares, and that the certificate of incorporation should be amended accordingly; and the formal proceeding was consummated in June, 1908, and was on its face regular. Its validity was not questioned or attacked at any time during its progress, nor was it questioned directly or indirectly until April 8th, 1911, unsuccessfully elsewhere. The complainants did not then attack it directly, but insisted, as they do here, that it did not affect them. They allowed nearly three years to elapse after the filing of the amended certificate before they took even that action.—*Held,* that the complainants by their delay forfeited the right to raise the question that they were exempted by contract from the operation of the proceedings, especially in view of the doubt thereby thrown over the three millions of debentures issued on the faith of the scheme of retirement, which operated equally upon all holders of stock.

*Mr. John O. Bigelow* and *Mr. H. V. Blaxter,* of Pennsylvania, for the complainants.

*Mr. J. Edward Ashmead* and *Mr. Max Pam,* of New York, for the defendant.

STEVENS, V. C.

The bill of complaint alleges that on July 30th, 1902, the complainants acquired one hundred and two shares of the preferred stock of the defendant company; that it ceased to pay dividends on this stock after August 15th, 1902, and that on May 15th, 1910, it began to pay and has since continued to pay dividends on the common stock. The prayer was that it be commanded to declare and pay to complainants and other preferred

stockholders dividends at the rate of six per cent. per annum whenever the same could be safely paid and that it be enjoined from paying any dividend upon the common stock while dividends upon the preferred stock remained unpaid.

The answer avers that in 1907 the financial condition of the defendant was such that a readjustment and reduction of its capital stock was considered desirable; that a committee of stockholders was appointed and that on their recommendation it was on January 3d, 1908, resolved by the board of directors "that it was advisable to change and decrease the defendant's authorized capital stock which was then $37,650,000 divided into three hundred and seventy-six thousand five hundred shares of the par value of $100 each and consisting of $19,540,000 par value of preferred stock and $18,110,000 par value of common stock, to $17,184,000 divided into one hundred and seventy-one thousand eight hundred and forty shares of the par value of $100 each, all of one class and kind without distinction or preference between any of the shares and that the certificate of incorporation should be amended accordingly; that after several adjournments of the stockholders' meetings called to act upon this resolution and after due notice to all the stockholders, including the complainants, the plan was on June 12th, 1908, declared effective, by the affirmative vote and written assent of ninety per centum of all the outstanding capital stock, and that on June 29th, 1908, a certificate of the amended certificate of incorporation was filed with the secretary of state together with the resolutions and proceedings of the stockholders.

The answer further averred that no objection was made by complainants to the carrying out of the plan and that in reliance upon the absence of objection the holders of one hundred and sixty-eight thousand three hundred and three shares of preferred stock (out of a total of one hundred and ninety thousand five hundred and forty) surrendered their shares and accepted in lieu thereof the securities and moneys issued and paid by defendants in satisfaction thereof; the securities being common stock to the amount of seventy-seven per cent. of the face value of the preferred shares, and debentures to the amount of twenty per cent. thereof; together with $3 in cash for each share.

After the filing of this answer, the complainants amended their bill by stating the above proceedings and charging that complainants never assented to them and that notwithstanding the action taken, their preferred shares are still outstanding and a valid obligation of the company.

There is no pretense that this action was not taken in good faith or that it was not, from a business standpoint, advantageous to the company and its stockholders. It was not opposed by anyone and has since been accepted with almost complete unanimity by both classes of stockholders. Even Thomas C. Lazear, one of the complainants, accepted it, as to seventy-one shares held in his own right.

The position of the complainants is this: We, as executors, made a contract with the company by which we were to be paid cumulative dividends at the rate of six per cent. We have never agreed to any change in it; consequently, it, as to us, remains intact. We do not ask that the proceedings, so far as it respects the assenting stockholders, be adjudged *ultra vires,* or that it be set aside. We stand merely on our *own* right. If this position be sound, there are still two classes of stockholders—the preferred, insignificant in point of numbers, and the common, alone recognized in the amended certificate.

In support of their position the complainants cite *Pronick* v. *Spirits Distributing Co., 58 N. J. Eq. 97,* where it was decided by Vice-Chancellor Emery, that the company had no power to alter the rate of dividend it had agreed originally to pay. The decision was put upon the ground that a general power to amend the certificate of incorporation did not authorize a disturbance of a vested right; that the attempted change impaired the obligation of the stockholders' contract.

The case was decided upon the provisions of the Corporation act as they stood prior to 1896. By section 27 of the act passed in that year it was enacted that

"every corporation may change the nature of its business, change its name, increase its capital stock, *decrease its capital stock,* change the par value of the shares of its capital stock—change its common stock into one or more classes of preferred stock, create one or more classes of preferred stock and make such other amendment, change or alteration as may be desired."

Section 29 provided that, "the decrease of capital stock may be effected by *retiring* or reducing any class of its stock."

These sections were considered in *Berger* v. *U. S. Steel Corporation, 63 N. J. Eq. 809.* Justice Van Syckel says: "The twenty-seventh and twenty-ninth sections of the Corporation act of 1896 expressly provide for the retirement of both classes of stock. The fifth section of the act provides 'that this act and all its amendments shall be a part of the charter of every corporation. heretofore or hereafter formed under it, except so far as the same are inapplicable and inappropriate to the objects of such corporation.' The complainant therefore has no vested right to retain her shares in opposition to any lawful method provided for retiring them."

From this quotation it is apparent that the case in hand differs from the case of *Pronick* v. *Spirits Distributing Co.* in the important particular that in that case the contract did not provide for a change and that in this, by statutory enactment, it does. There can be no question but that under the power conferred by section 29, any class of the stock of companies organized under the act of 1896, may be retired *in toto.*

The question, then, is narrowed down to this: If retired, must it be for a money equivalent only? There is nothing in the act itself which, in terms, so provides. Reliance is, however, placed upon the following passage from Judge Van Syckel's opinion in the *Berger Case:* "The first two methods provided for retiring the stock (*i. e.,* the method of retiring and reducing the stock and the method of drawing the necessary number of shares by lot for retirement) are compulsory and if the company had *cash* assets to retire in those methods, the further provision for retirement by purchase would be unnecessary. The inference is that the draftsman of the twenty-ninth section intended to bestow the power to purchase on credit, cash assets not being in hand." It is clear from this, say complainants' counsel, that the court of errors and appeals understood that preferred stock could be compulsorily retired only for cash.

It is unnecessary for me to decide the question, for I think that complainants must fail on another ground. The power to retire is conceded. It is also conceded that the formal proceed-

ing, consummated in June, 1908, was on its face regular. Its validity was not questioned or attacked at any time during its progress, nor was it questioned, directly or indirectly, until April 8th, 1911, when complainants began suit in the United States district court for the western district of Pennsylvania. They did not then attack it directly, but insisted, as they do here, that it did not affect them. They allowed nearly three years to elapse after the filing of the amended certificate before they took even that action and they did not ultimately prevail in it.

Justice Van Syckel, speaking of the method of retiring stock that was adopted in the present case, says that it is compulsory and must operate equally upon all holders. The amended certificate of incorporation so provides. It does not and could not save the right of those who do not come into the plan. It constitutes a single class of stock and that unpreferred. If the court should give judicial recognition to two classes of stock, it would not only disregard the charter as amended, but it would assert in effect that the method adopted was not compulsory and was not to operate upon all alike. Hence, to declare that it did not bind complainants would be to declare it unwarranted in point of law, and so, among other things, to throw doubt over the validity of the three millions of debentures issued on the face of it, to carry it into effect. The complainant had ample notice of the scheme and ample opportunity to be heard in opposition to it. Under these circumstances, it seems to me that the attack upon it, indirect though it be, comes too late. It is not an attack upon the *right* to retire, but only upon the mode in which it has been exercised. To such an attack delay is fatal. The principle of cases like *Kent* v. *Quicksilver Mining Co., 78 N. Y. 159; Rabe* v. *Dunlap, 51 N. J. Eq. 40,* and *Dana* v. *American Tobacco Company, 72 N. J. Eq. 44; 73 N. J. Eq. 736,* applies, and therefore the bill should be dismissed.